UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Warehouse, Production, Maintenance
and Miscellaneous Employees, Furniture,
Piano and Express Drivers and Helpers Local
Union No. 661, affiliated with the International
Brotherhood of Teamsters,

   Plaintiff,

 v.

Zenith Logistics, Inc., et al.

   Defendants.

Case No. 1:06cv846

Judge Michael R. Barrett

## ORDER

The Kroger Company and Kroger Limited Partnership I (collectively "Kroger") move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Complaint for failure to state a claim upon which relief can be granted (Doc. 9). Defendant seeks to dismiss the Complaint on the grounds that the action is time-barred by the statute of limitations. Plaintiff objects to the motion on the grounds that its action is not time-barred by the statute of limitations (Doc. 15). Defendant Kroger filed a reply (Doc. 16).

Background and Facts

Plaintiff brings this action under the Labor Management Relations Act of 1947 ("Act"), as amended, to compel arbitration of two grievances filed under a collective bargaining agreement ("Zenith Agreement"). The action is brought against Zenith Logistics, Inc. ("Zenith") as a formal signatory to the agreement. The action is brought against Kroger as joint employers with Zenith.

Before November 1998, Defendant Kroger operated a warehouse at 98 Glendale-Milford road in Woodlawn, Ohio ("Woodlawn warehouse"). Doc.1, ¶8. The employees of the Woodlawn warehouse were, until 1998, direct employees of Defendant Kroger. Id. The terms and conditions of their employment were governed by a collective bargaining agreement between Plaintiff Local 661 and Defendant Kroger. Id.

In November 1998, Defendant Kroger entered into an agreement with Defendant Zenith to lease the Woodlawn warehouse building and equipment owned by Kroger and to provide warehousing and transportation services to Kroger and its retail stores. Id. Zenith hired substantially all of the same employees that were formerly employed by Kroger and has twice since negotiated with Local 161 the collective bargaining agreement at issue in the Complaint. Doc. 1, ¶ 9.

Plaintiff brings this action to enforce Article 25 of the agreement between Local 161 and Zenith, which provides a mandatory method for presentation and resolution of disputes between Zenith and Local 161 or its employees. Doc. 1, ¶11. A written grievance is to be filed and processed according to specified steps, culminating in binding arbitration before a third-party, neutral arbitrator. Id.

In the time period between January and April 2006, Plaintiff Local 161 filed three grievances under the Zenith Agreement against both Defendant Zenith and Defendant Kroger. Doc. 1, ¶ 12. These grievances by Local 661 were filed on or about January 21, February 2 and April 7. Doc. 4, Exhibits B, C, and D. These grievances alleged that the Defendant companies as joint employers violated the collective bargaining agreement by planning to contract out, and then actually contracting out to an outside

2

company, certain warehouse work that had been performed by Woodlawn employees represented by Local 661. The work specifically involved unloading shipments of products to the warehouse, referred to as "freight dock" work, and "salvage" work, which involves tasks relating to spoiled or damaged goods. Doc. 1, ¶ 12. The grievances allege that the companies' actions specifically violated Articles 1, 27, and 29 of the Zenith Agreement and that, although Kroger was not a formal signatory to the Agreement, it is bound as a "joint employer with Zenith." Doc. 15, see also Doc. 4, Exhibits B, C, and D.

Following the January 21 grievance by Local 661, Teamsters sent a letter, dated January 30, 2006, to Kroger requesting information regarding the subcontracts being executed at the Woodlawn Warehouse. Doc. 9. Kroger responded to Teamsters and copied Local 661 in a letter dated February 3, 2006. Id., Exhibit B. In the letter, Kroger asserted that the subcontracting at the Woodlawn Warehouse was *not* governed by the Kroger Master Agreement ("KMA"), the collective bargaining agreement between the Teamsters and Kroger covering Kroger-operated distribution centers and that Kroger was not party to the collective bargaining agreement between Zenith and Local 661 covering the employees at the Woodlawn Warehouse.

> The relevant section of the Kroger February 3, 2006 letter states as follows:
>
> It appears that both of these letters are addressed to the wrong party. As you know, Kroger sold the Woodlawn warehouse in 1998 and no longer employs the hourly employees at the warehouse. My understanding is that the hourly employees are employed by Zenith Logistics, and that Zenith and the Teamsters have entered into a collective bargaining agreement. Kroger is not a party to such agreement; there, Local 661 should direct its grievance to Zenith and not Kroger.

3

> As for your argument that the Master Agreement between Kroger and the Teamsters extends to the Woodlawn warehouse, this argument is simply wrong. The Master Agreement does not cover any work performed at Woodlawn or any other location not agreed to in Master negotiations, and certainly does not cover the Zenith employees at Woodlawn. Furthermore, when Kroger sold and transferred the warehouse operations to Zenith in 1998, Kroger and the Teamsters entered into an agreement resolving all outstanding issues between the parties, including the termination of the Woodlawn employees' employment with Kroger. Therefore, the Teamsters are not entitled to the information requested in your January 30 letter.

The communication between Kroger and Teamsters continued[1] following Teamsters filing of two grievances on February 21 and February 23, 2006.[2] In a letter dated March 2, 2006, Kroger denied the Teamsters' request for hearings on the grievances. Doc. 9, Exhibit C. Again on April 3, 2006, Teamsters requested hearings on another of its grievances filed April 3, 2006.[3] Kroger responded in a letter dated April 3, 2006. Doc. 9. Bob Biggs, Chairman of the Kroger Committee, wrote:

---

[1] Kroger did not respond to Local 661's grievance filed on February 2, 2006. Doc. 15.
[2] Mr. John Williams, Director of the Teamsters Warehouse Division in Washington, D.C. and Co-Chair of the Teamsters Kroger Negotiating Committee ("TKNCC"), filed the two grievances under the KMA. The KMA is between Kroger and TKNCC and various Teamster locals around the country that represent Kroger employees. Local unions such as Local 661 are party to the KMA and each has a local, supplemental agreement with Kroger to cover the specific issues of Kroger employees at that location. It is Kroger's position that because it no longer directly employed the employees at the Woodlawn Warehouse, Local 661 was not party to the KMA. Doc. 15. The two grievances objected to the subcontracting of work at the Woodlawn warehouses and another warehouse operated by Zenith in Indianapolis. Doc. 9.
[3] The April 3 grievance was also related to the subcontracting at the Woodlawn warehouse. Doc. 9. The defendant points out that Teamsters acknowledges Kroger's refusal to participate in the grievances:

> "Despite Kroger's past refusals to hear similar grievances, the [TKNCC] continues to maintain the position that such subcontracting violates the [KMA] and is subject to . . . [the] grievance process."
>
> Doc. 9 (emphasis in text).

> "**Kroger's position has not changed.** The Master Agreement does not cover employees from the locations referred in your April 3, 2006 letter. Kroger will not intrude in the Labor Relations of these other companies and Kroger will not allow any such employer to intrude in Kroger's Labor Relation with the IBT Local Union that represent our employees."

Doc. 9 (emphasis in text).

The direct communication between Kroger and Local 661 resumed when Local 661 filed a grievance on April 7, 2006 protesting the subcontracting at the Woodlawn warehouse. Doc. 4, Exhibit D. The grievance again listed Kroger as a "joint employer" with Zenith. Id. Kroger responded in a letter dated April 24, 2006, in which it stated that "**Kroger's position has not changed from the February 3 or March 2, 2006 letters to Mr. Williams.**" Id., Exhibit I (emphasis in text).

Two months passed until June 15, 2006, when Kroger received a letter from the American Arbitration Association. Doc. 9, Exhibit J. The letter referenced the subcontracting grievances and enclosed a panel of arbitrators. Id. Kroger responded by letter dated June 22, 2006 to counsel for Local 661 and maintained its refusal to participate in the subcontracting grievances. Doc. 4, Exhibit E. The relevant language is as follows:

> "We have received the Company's earlier correspondence to John Williams of the IBT regarding the grievance over the transfer of the freight dock work, in which Kroger takes the position that it is not party to the Zenith contract. The Union disagrees and believes the evidence will show that Kroger is a joint employer with Zenith at the Woodlawn warehouse. So far Kroger has not participated in the grievance process with Zenith on the subcontracting grievances. The Union intends to proceed with these grievances, including with regard to the joint employer issue, with or without Kroger's participation. It is the Union's position that Kroger is a party to these grievances and that it is bound by the outcome even if it chooses not to participate in the grievance process on these claims.

5

> This grievance has previously been the subject of correspondence between Kroger's Vice President of Labor Relations, John Wagner, and Teamster director, John Williams.  Enclosed for your reference are Mr. Wagner's letters to Mr. Williams of February 3, 2006 and March 2, 2006.  As you can see from these letters, Kroger is not a proper party to this grievance due to the fact that Kroger sold the Woodlawn warehouse in 1998 and no longer employs the hourly employees at the warehouse.  Such employees are employed by Zenith Logistics, and it is Zenith, rather than Kroger, that is a party to the collective bargaining agreement with Teamsters Local 661 that covers these employees.  Moreover, the Kroger Master Agreement does not cover employees of Zenith Logistics who are represented by Local 661.
>
> Therefore, since Kroger does not employ the Zenith employees and is not a party to the collective bargaining agreement at issue in this grievance, Kroger is not a proper party to the arbitration and will not participate in the arbitration. Moreover, any resolution or decision regarding such grievance is not binding on Kroger and will not be recognized by Kroger.
>
> Id.

On December 12, 2006, Local 661 filed its Complaint against Kroger and Zenith to compel arbitration of the subcontracting grievances.  Doc. 1.  Defendants brought this motion to dismiss for failure to state a claim on January 11, 2007.  Doc. 9.

Standard of Review

This Motion is brought under Fed. R. Civ. P. 12(b)(6).  A motion to dismiss pursuant to Rule 12 (b)(6) operates to test the sufficiency of the complaint.  The court is required to construe the complaint in the light most favorable to the Plaintiff, and accept all well-pleaded factual allegations in the complaint as true.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) and *Lewis v. ACB Business Services*, 135 F.3d 389, 405 (6th Cir. 1998).  A court, however, will not accept conclusions of law or unwarranted inferences which are presented as factual allegations. *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1974).  A complaint must contain either direct or reasonable

6

inferential allegations that support all material elements necessary to sustain a recovery under some viable legal theory. *Lewis v. ACB*, 135 F.3d at 405 (internal citations omitted). As the Supreme Court recently held in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, (May 21, 2007), a complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974 (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965. "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 1969.

When deciding a motion to dismiss, a court generally may not consider any facts outside the Complaint and its attached exhibits. *Amini v. Oberlin College*, 259 F. 3d 493, 502 (6th Cir. 2001). Accordingly, when a defendant moves for 12(b)(6) dismissal and includes matters outside the pleadings for consideration by the court, the court may consider the motion as one summary judgment under Fed. R. Civ. P. 56. See *Sinclair v. Schriber,* 916 F. 2d 1109, 1112 (6th Cir. 1990); *Friedman v. United States*, 927 F. 2d 259, 261 (6th Cir. 1991).

Defendant asserts in its motion to dismiss a statute of limitations defense and offers in its support a litany of attachments narrating the January to June 2006 history of back-and-forth communication between itself, the defendant and Teamster's. For this reason, it is the plaintiff's position that defendant's motion should be treated as a motion

7

for summary judgment. The plaintiff argues that the defendant's attachments have broadened the scope of the inquiry beyond what was alleged in the Complaint and that it should now be held to the higher summary judgment standard of proving that there exists no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 – 323 (1986).

The Sixth Circuit has allowed an exception to this general rule if what is offered by the defendant's motion is determined by this Court to "simply fill[ ] in the contours and details of the plaintiff's complaint," that it "adds nothing new," and that this Court's rationale does not "in any way hinge[ ] on the additional information provided" by the attachments. *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F. 3d 443, 445 (6th Cir. 1997). The plaintiff takes issue with the defendant's attachments of the defendant's responses to the plaintiff's grievances and to the requests for information by the plaintiff's affiliate in January, February and April 2006.

For this Court to consider the defendant's attachments regarding the January, February and April grievances and requests for information, the Sixth Circuit standard requires that it conclude that the attachments relate to the allegations made in the Complaint. To that very point, the plaintiff's Complaint declares that "[o]n or about January 21, 2006, February 2, 2006, and April 7, 2006, Local 661 filed grievances under the [Zenith Agreement]." Moreover, the plaintiff attaches these three grievances as exhibits accompanying the Complaint. Therefore, this Court concludes that it is well within reason that it consider the defendant's responses to these grievances and all other materials which give context thereto. Having now laid to rest the issue of whether

8

this motion is one for dismissal or for summary judgment, the Court now proceeds to determine whether the plaintiff has stated a claim upon which relief may be granted.

Legal Analysis

Suits such as this one brought by the Plaintiff to compel arbitration pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 are subject to a six-month statute of limitations. *McCreedy v. Local Union No. 971, UAW*, 809 F. 2d 1232, 1237 (6th Cir. 1987). The statute of limitations begins at the time "when the employer takes an unequivocal position that it will not arbitrate." *Id.* It is therefore the objective of this Court to determine on what date did Kroger first take the unequivocal position that it would not arbitrate the grievances filed by the plaintiff.

Local 661 initiated this action on December 12, 2006. Plaintiffs must therefore allege that an unequivocal position was not taken by the Defendant Kroger at any time on or before June 11, 2006. Accordingly, Plaintiff alleges in its Complaint that "[o]n or about June 22, 2006, Defendant Kroger informed the Union that it would not participate in an arbitration proceeding on the grievances." Complaint ¶ 14. Kroger, on the other hand, argues in its motion to dismiss that it had since January 2006 taken the position that it would not participate in any grievance procedures with Local 661 because it was not party to the contract under which the procedures were required. The Court agrees with the defendant that it was consistent and clear in its pronunciation that it would not be a participatory in any grievance procedure with the Plaintiff.

In an effort to argue that Defendant Kroger's unequivocal pronunciation was directed at Teamster's and not at Local 661, the plaintiff makes much ado regarding the

distinctions between itself and its affiliate union. The plaintiff characterizes itself as isolated from the communication between Kroger and Teamster's and that, despite Kroger's firm letters in response to all grievances and requests for information, it was not made aware of Kroger's reluctance until June 2006. The supporting documents tell another story, however. This Court finds commendable the diligence with which Kroger answered the two union's grievances, despite that Kroger understood itself as contractually bound only to Teamster's. For this Court to treat Teamster's and Local 661, whom operate with close affiliation, as strangers whom *coincidentally* acted in unison to extract information and force arbitration on a single issue at the Woodlawn Warehouse, would require this Court to turn a blind eye toward a well-organized campaign by two obviously well-acquainted partners.

It is of greater concern to this Court how it should determine the date upon which Kroger unequivocally stated its refusal to either process or arbitrate the grievances filed by Local 661. The Sixth Circuit recently rejected an argument that an unequivocal position might be maintained while there are ongoing negotiations between parties. *International Union v. Cummings, Inc.*, 434 F. 3d 478 (6th Cir. 2006). The court instead endorsed the First Circuit's reasoning in *Communications Workers of America v. Western Elecric Co.*, 860 F. 2d 1137 (1st Cir. 1988) ("*CWA*"). *Id.* In *CWA*, the Second Circuit held that a company had taken an unequivocal position when its "refusal to arbitrate was 'immediate, blunt and to the point [and] because it flatly refused to arbitrate despite four requests from the union." *International Union*, 434 F. 3d at 483 (quoting *CWA*, 860 F. 2d at 1145).

Kroger's communication regarding the grievances filed by Local 661 during the time period between January and June 2006 was always immediate, blunt and to the point.  The Court acknowledges, however, that the communication between the parties did not foreclose negotiation of whether to enter arbitration until later in the process. The April 15, 2006 letter to Kroger from Local 661 clearly threatens to pursue action that would be binding upon Kroger, despite their nonparticipation.  Arbitration, though not explicitly stated, was clearly implied by the Plaintiff.  Kroger again responded that its "position had not changed" and that it would not participate in any grievance procedures. The Court concludes, therefore, that it was obvious to both parties by at least April 2006 that Kroger was not willing to participate in any grievance process, including any process that would result in a binding decision.  Kroger, by its letter dated April 24, 2006, unequivocally stated it was not willing to participate in any arbitration proceedings.

It follows that any suit by the plaintiff to compel arbitration by Defendant Kroger must have been brought by October 24, 2006.  Because the Plaintiff's action was not brought until December 2006, it is time-barred by the statute of limitations.  Accordingly, this Court grants Defendant Kroger's motion to dismiss.

**IT IS SO ORDERED.**

 s/Michael R. Barrett
Michael R. Barrett, Judge
United States District Court